UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DANIEL BROWN, a/k/a DANIEL M. BROWN, | ) ) | Civil Action No.: 4:14-cv-0357-BHH-TER |
| Plaintiff, | ) ) ) | |
| -vs- | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| WARDEN WILLIE EAGLETON and E. HEYWARD, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional right to be free from cruel and unusual punishment by using excessive force.  Presently before the court is Defendants' Motion for Summary Judgment (Document # 63).  Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in dismissal of his Complaint.  Plaintiff did not file a response to Defendants' motion but filed his own Motions for Default Judgment and Summary Judgment (Documents # 77, 78).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  This report and recommendation is entered for review by the district judge.

## II.    MOTIONS FOR SUMMARY JUDGMENT

### A.    Facts

On September 4, 2012, Defendant Sergeant Eugene Heyward was in the Waxhaw dorm letting inmates out of their cells to go to the canteen.  Complaint p. 3; Report on the Use of Force

and Incident Report (Ex. A to Heyward Aff.).  Plaintiff was standing at his cell door waiting to go

to canteen.  Complaint p. 3.  Heyward walked past Plaintiff's cell without letting him out to go to

the canteen.  Complaint p. 3.  The parties dispute what happened next.  Plaintiff states that he

attempted to get Heyward's attention by beating or banging or knocking on his cell door.  Complaint

p. 3; Disciplinary Hearing Transcript (Ex. E to Pl. Motion for Summary Judgment).  In his Report

on the Use of Force and His Incident Report, Heyward characterizes Plaintiff's actions as banging

and kicking.  Heyward gave Plaintiff several directives to stop banging and kicking his door, which

Plaintiff ignored. Heyward Aff. ¶ 7; Report on the Use of Force and Incident Report.  Heyward

opened Plaintiff's cell door and administered 12 grams of Sabre Red Pepper Spray to Plaintiff's

facial area.  Complaint p. 3; Heyward Aff. ¶ 7; Report on the Use of Force and Incident Report.

Plaintiff was seen by a nurse approximately five minutes after the use of the pepper spray.  Report

on the Use of Force.  The nurse noted no injuries and instructed Plaintiff to wash his eyes out as

needed.  She also noted that Plaintiff left with no complaints.  Report on the Use of Force; Medical

Summary (Ex. B to Heyward Aff.).

### B.    Standard of Review

The moving party bears the burden of showing that summary judgment is proper.  Summary

judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is proper if the non-moving party fails to establish an essential element of any

cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a

material element of the non-moving party's claims, the non-moving party bears the burden of coming

forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita

Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

C.     Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek

relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Plaintiff alleges that Defendants violated his right to be free from cruel and unusual punishment by using excessive force. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, 559 U.S. 34, 39, 130 S.Ct. 1175, 1179, 175 L.Ed.2d 995 (2010). The Eighth Amendment analysis requires inquiry as to whether a prison official "acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, 77 F3d at 761.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. Id. (internal quotation marks omitted). The objective component is not as demanding because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidenced." Wilkins, 559 U.S. at 37 (internal quotation marks omitted). In Whitley, the Supreme Court identified four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically"

-4-

to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"[1]; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Id. at 321. In addition to these factors, the Fourth Circuit also considers any efforts made to temper the severity of a forceful response. Williams, 77 F.3d at 762.

While Plaintiff disputes the exact nature of his conduct, whether he was knocking, banging, beating and/or kicking his cell door, he does not dispute that Heyward gave him directives to stop the conduct and he ignored him.[2] An inmate's repeated refusal to comply with an officer's orders gives rise to the need for the use of some force. See Williams, 77 F.3d at 763 ("Mace can be constitutionally used in small quantities to ... control a 'recalcitrant inmate.'"); Iko v. Shreve, 535 F.3d 225, 239 (applying the Whitley factors and stating "there is no question that some dispersal of

---

[1]While the Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins, 559 U.S. at 37. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 559 U.S. at 37. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

[2]In his complaint, Plaintiff states that he
knocked on his cell door in a normal manner just to get [Heyward's] attention. Sergeant E. Heyward then yelled to me that "your [sic] dead." I then yelled thru [sic] the door so Sergeant E. Heyward could hear me that I was at the cell door when he walked by. Sergeant E. Heyward continued doing his rounds and never came back to my cell door. I then knocked on the cell door again to tell him I needed to talk to the Lieutenant of the dorm. Sergeant E. Heyward then walked back to my cell door, unlocked my cell door, and administered Sabre Red chemical munition to the facial area, twice.

Complaint p. 3. In his affidavit he states "once defendant return [sic] to cell door plaintiff stop [sic] knocking." Pl. Aff. ¶ 2 (Ex. to Pl. Motion for Summary Judgment).

pepper spray was warranted" where the inmate refused directives to come to the cell door to be handcuffed); see also Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Thus, the court must turn to the relationship between the need for force and the amount of force used.

The "limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." Williams, 77 F.3d at 763. Consequently, a prison official's use of chemical munitions on an inmate to prevent disorder generally does not infringe the Eighth Amendment's prohibition against cruel and unusual punishment as long as the quantity of chemical munitions is commensurate with the gravity of the occasion. Bailey, 736 F.2d at 968. Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." Id. at 969. Here, it is undisputed that Heyward sprayed twelve grams of pepper spray in Plaintiff's facial area. This court has found the use of more than twice as much gas "not constitutionally relevant." See, e.g., Plummer v. Goodwin, No. 8:07–2741–TLW–BHH, 2010 WL 419927, at *7 n. 4 (D.S.C. Jan.29, 2010) (unpublished) (finding the use of 33.5 grams of chemical munitions to be "not constitutionally relevant"); Robinson v. South Carolina Dept. of Corrections, No. 5:10-2593-HMH-KDW, 2012 WL 851042, *7 (D.S.C. Mar. 13, 2012) (31 grams).

Additionally, the extent of the injury suffered by Plaintiff as a result of the gas used by Heyward is minimal if that. Plaintiff was seen by a nurse soon after the use of the pepper spray. She noted no injuries and that Plaintiff had no complaints upon leaving. Plaintiff argues that he began suffering headaches in October of 2012. While the medical records submitted by Plaintiff dated

between January and February of 2013, do note chronic headaches, the records indicate that the headaches may be related to an altercation in December of 2012, during which Plaintiff suffered a head injury.  See Medical Records (Ex. B to Pl. Motion for Summary Judgment).  This evidence fails to show that Plaintiff's headaches were related to the pepper spray used by Heyward.     Thus, although the lack of a significant injury related to the incident in question is not conclusive, it is a relevant factor to consider.

With the respect to the threat reasonably perceived by the responsible officials, Plaintiff argues that Heyward could not have felt threatened because he opened Plaintiff's cell door to use the pepper spray.  However, even if Heyward did not perceive Plaintiff to be a physical threat, Plaintiff's actions could have been a threat to maintaining discipline and order within the dorm.  "One can quickly reason what would happen in a maximum security prison without proper discipline."  Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984).  If an "inmate cannot be persuaded to obey the order, some means must be used to compel compliance."  Id.

Finally, Heyward made efforts to temper the use of force by first giving Plaintiff verbal commands to stop his conduct.  When Plaintiff failed to comply with the verbal orders, Heyward used a minimal amount of pepper spray to gain his compliance.

For these reasons, Plaintiff fails to show that Heyward applied force maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.  Therefore, his excessive force claim against Heyward is without merit.

As to Eagleton, Plaintiff does not allege or present facts indicating that Eagleton used any force against him.  In his Motion for Summary Judgment, Plaintiff argues that Eagleton is Heyward's supervisor and, thus, is responsible for Heyward's actions.  Because there is no doctrine of respondeat superior in § 1983 claims, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691–94,

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994). A plaintiff must establish three elements to prevail on a theory of supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Id. at 799. Plaintiff fails to present evidence to support any of these factors. Therefore, summary judgment is appropriate as to Eagleton.

Finally, Defendants also argue that they are entitled to qualified immunity on Plaintiff's claims. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. The Harlow Court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, "a court must first determine whether the Plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the

-8-

benefit of both the officers and the general public." <u>Wilson</u>, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." <u>Porterfield v. Lott</u>, 156 F.3d 563, 567 (4th Cir.1998).

In <u>Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

As previously discussed, Plaintiff has failed to show that Heyward or Eagleton violated any of his constitutional rights. However, to the extent there was a constitutional violation, a reasonable person in their positions would not have known that their conduct violated Plaintiff's constitutional rights. Thus, Defendants are entitled to qualified immunity for Plaintiff's claims against them in their individual capacities.

## III. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff seeks default judgment against Defendants for their failure to respond to discovery requests as ordered by this court on November 21, 2014. Plaintiff had previously filed a motion seeking to compel Defendants to produce SCDC's policy on "excessive use of force" and the rules, regulations and policies with respect to the use of pepper spray. In their discovery responses, Defendants objected to providing documents responsive to the request, arguing that production of the documents could jeopardize the safety of inmates and employees at SCDC. In ruling on the motion to compel, the court determined that Defendants had failed to identify the security risks in producing

the excessive use of force policy or the rules, regulations, and policies regarding the use of pepper

spray. The court granted the Plaintiff's motion to compel as to these documents, but provided that "if

Defendants can point to particular security concerns with respect to the production of the excessive

use of force policy or the rules, regulations and policies with respect to the use of pepper spray, they

may seek reconsideration of this ruling within ten days of the date of this Order. Otherwise,

Defendants are directed to produce the requested documents within fifteen days of the date of this

order." Order (Document # 66) p. 3.

Although Defendants did not file a motion for reconsideration, they did file a supplemental

response (Document # 71) to the motion to compel and attached an affidavit[3] of Colie Rushton, the

Director of the Division of Security for the SCDC. Mr. Rushton avers The SCDC Use of Force Policy

OP-22.01 is classified as restricted. The Use of Force policy addresses each and every aspect of the

types of force utilized within SCDC, including the use of chemical munitions about which the Plaintiff

complains in this case. Rushton Aff. ¶ 9. The purpose of the policy is to define and establish guidelines

regarding the use of force and mechanical security restraints to protect the safety, security and order

of the public, staff, inmates and others. SCDC tasks its employees with an inherently dangerous job:

work face-to-face with inmate population that severely outnumbers them every day. Staff members,

when authorized, are trained to use minimum reasonable force to gain control of an inmate, ensure

institutional security and good order, protect the safety of staff, inmates, and others, and prevent the

destruction of property. Rushton Aff. ¶ 6. Should this policy ever be provided to an inmate, the safety

and welfare of every SCDC employee would be in jeopardy. The policy provides the minutest specifics

as to the force continuum to include identifying the responsive levels of control resulting from various

---

[3]This affidavit was originally filed in another case, but speaks to the same concerns raised
here regarding the production of SCDC's use of force policy.

levels of resistance from inmates. Rushton Aff. ¶ 7. Providing inmates with the knowledge of how officers and staff members within the correctional institutions react to every situation would not only limit the ability of these SCDC employees to maintain order, but would place their lives at risk. Rushton Aff. ¶ 7. Because SCDC employees are vastly outnumbered by the inmate population, inmates knowledge the use of force procedures on which the officers rely would jeopardize the life and security of every institution, the public, and the safety of other inmates. Rushton Aff. ¶¶ 11-12.

Defendants have presented sufficient evidence to show that the burden of producing the requested documents outweighs the benefits. <u>See</u> Fed.R.Civ.P. 26(b)(2)(C)(iii). Thus, that portion of this court's order (Document # 66) granting Plaintiff's motion to compel with respect to SCDC's policy on "excessive use of force" and the rules, regulations and policies with respect to the use of pepper spray is hereby vacated and the motion to compel is denied in all respects.

Furthermore, Defendants did not violate this court's order by failing to produce the documents and, thus, an entry of default is not appropriate.

## IV.     CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 63) be granted, Plaintiff's Motions for Default Judgment and Summary Judgment (Documents # 77, 78) be denied, and this case be dismissed in its entirety.


   s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

March 30, 2015
Florence, South Carolina

**The parties are directed to the important information on the following page.**

-11-